## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARK ALFRED DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-17-298-JHP-SPS** |
| | ) | |
| **COMMISSIONER of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Mark Alfred Davis requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]Step one requires the claimant to establish that he is not engaged in substantial gainful activity.  Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-nine years old at the time of the administrative hearing (Tr. 39). He completed his GED and has worked as an electrician apprentice (Tr. 19, 284). The claimant alleges inability to work since April 18, 2013 due to problems with his back and legs, anxiety, and depression (Tr. 13, 283).

### Procedural History

On March 31, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ B.D. Crutchfield conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 22, 2016 (Tr. 10-21). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i. e.*, he could lift/carry ten pounds occasionally and less than ten pounds frequently, stand/walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday, except that he was unable to climb ropes, ladders, and scaffolds, and he could only

occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl. Additionally, she determined that he could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that he could not relate to the general public (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, semi-conductor bonder, machine feeder, and film touch-up inspector (Tr. 19-20).

### Review

The claimant contends that the ALJ erred by: (i) improperly weighing the medical evidence, namely, treating physician opinions, and (ii) failing to identify jobs that account for *all* of his impairments. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease, status post fusion at L4-L5 and L5-S1, depression, and anxiety (Tr. 13). The medical evidence relevant to this appeal reveals that in 2008, the claimant underwent a laminectomy, discectomy, and fusion at L4-5 and L5-S1, performed by Dr. Tyler Boone (Tr. 360, 375). Following that surgery, the claimant was released with permanent restrictions to sedentary work (Tr. 399). On August 6, 2012, Dr. Boone saw the claimant again and assessed him with postlaminectomy syndrome and chronic back pain with a history of previous fusion (Tr. 399). Noting that the claimant was in pain management, Dr. Boone stated that there would "probably be hours every day, days every week, and

weeks in every month that he would not be able to pursue even light or sedentary work" (Tr. 399). Dr. Boone recommended an MRI but also stated that he did not foresee the claimant returning to gainful employment even at the sedentary level (Tr. 401).

In December 2013, the claimant presented to Precision Internal Medicine Care for several complaints, including low back pain, but left suddenly, refusing further discussion or lab work, and a treatment plan was not executed (Tr. 403). On April 30, 2014, the claimant presented to Tahlequah City Hospital with complaints of lower leg and shoulder pain but left before he was given the prescription and discharge instructions (Tr. 432).

The claimant received treatment from Dr. Kalvin L. White, D.O, of Pain Management of Tulsa. On March 12, 2013, Dr. White examined the claimant and noted arthritis and that his right leg seemed shorter than the left (Tr. 420). Upon exam, the claimant had tenderness in the lumbar region with some spasm, and symmetrical muscle strength (Tr. 420). He assessed the claimant with chronic pain syndrome, post laminectomy pain, and intractable radiculopathy, and recommended a follow-up MRI (Tr. 421). He next saw the claimant on October 11, 2013, and the treatment notes largely discussed a medication adjustment (Tr. 417). A January 23, 2014 note indicates a report of "a bit more pain in his feet and ankles," as well as "intractable radiculopathy in both legs" (Tr. 416). On April 22, 2014, Dr. White completed a letter stating that the claimant was "unable to work because of an injury to his back and subsequent surgery. He has persistent intractable pain." (Tr. 411). Treatment notes from that day reflect continued low back, leg, shoulder, neck, and head pain (Tr. 414). The claimant returned to Dr. White again on August 21, 2014, and the treatment notes state that the claimant continued "to do

about the same," but reported increased pain in his right shoulder after a fall (Tr. 440). The following month, Dr. White drafted another letter in which he stated the claimant could not work and had "persistent intractable pain" (Tr. 439). On April 13, 2015, the claimant reported that his pain was a 3.5/10, but he was also reporting a higher incidence of falling, and he used a cane for ambulation (Tr. 450). He reported on July 2, 2015 that his pain in the right shoulder was getting better (Tr. 449). On October 9, 2015, the claimant reported increased joint pain and continued to ambulate with a cane (Tr. 447).

State reviewing physicians determined that the claimant could perform sedentary work, but that he could never climb ladders/ropes/scaffolds, and only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl (Tr. 110-111, 139-141). As to his mental impairments, state reviewing physicians found that the claimant was markedly limited in the three typical areas of understanding and remembering detailed instructions, carrying out detailed instructions, and interacting appropriately with the general public (Tr. 113). They concluded that he could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that he could not relate to the general public (Tr. 114, 142-143).

In her written opinion, the ALJ thoroughly summarized the claimant's testimony, as well as the medical evidence contained in the record. As relevant to this appeal, the ALJ discussed all of the opinion evidence in the record, including the opinions of Dr. Boone and Dr. White. As to Dr. Boone, the ALJ determined that, because Dr. Boone's opinion was assessed as part of the claimant's previous application for benefits that had been denied on April 17, 2013, she was bound by *res judicata* and would not re-evaluate this evidence

(Tr. 16). As to Dr. White, she found that the limited physical exams he performed did not support his statement that the claimant had persistent intractable pain. She noted that he saw the claimant three times prior to his April 2014 opinion that the claimant was unable to work; that treatment notes from the same day of the April 2014 opinion reflect that the claimant's current regimen was working "quite well"; and that opinions as to whether the claimant is disabled are issues reserved to the Commissioner (Tr. 17). She therefore assigned little weight to his opinion, as being in conflict with his own treatment notes and inconsistent with the other substantial evidence in the record (Tr. 17). The ALJ stated later in the opinion that the claimant had minimal findings on physical examination, and that there were no objective findings that the claimant could not perform the sedentary RFC as set forth above (Tr. 19). She then assigned significant weight to the opinions of the state reviewing physicians as they are considered experts in disability law and their opinions were supported by the record (Tr. 19). She ultimately determined that the claimant was not disabled (Tr. 21).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment

-7-

provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Medical opinions from a treating physician are also entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting* Soc. Sec. R. 96-2p, 1996 WL 374188, at *4 (July 2, 1996). Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *Watkins*, 350 F.3d at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 [quotation omitted]. Here, as described above, the ALJ rejected every opinion of the examining and consultative physicians, in favor of nonexamining

-8-

physicians' opinions, while engaging in improper picking and choosing. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). The Commissioner parrots the ALJ's assertion that she was bound by *res judicata* as to Dr. Boone's opinion without citing to any case law, but the ALJ may not ignore evidence such as this, which clearly indicates an effect on the claimant's ability to perform work *during* the relevant time period, without explanation, particularly where it corroborates an opinion (Dr. White's) that *does* exist within the relevant time period. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted].

Additionally, although an ALJ is not required to give controlling weight to an opinion that the claimant could not return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), she *is required* to determine the proper weight to give that opinion by applying the factors in 20

C.F.R. § 404.1527, specifically in relation to functional limitations.  Instead, the ALJ ignored the evidence in the record regarding the claimant's continued pain and need for treatment, focusing on those notes where the claimant was doing well.  The ALJ thus improperly evaluated the treating physician opinion that the claimant could not work.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

Finally, despite the evidence and testimony in the record before him, the ALJ only recited one notation that the claimant ambulated with a cane, and therefore made no findings regarding his use of a cane in relation to the RFC (Tr. 17).  *See Staples v Astrue*, 329 Fed. Appx. 189, 191-192 (10th Cir. 2009) ("The standard described in SSR 96-9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of [his] RFC.  Instead, [he] only needs to present medical documentation establishing the need for the device.  The ALJ therefore erred in relying on [the claimant's] lack of a prescription for a cane.").  *See also* Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  This indicates further deliberate efforts to pick and choose among the evidence to use only favorable portions in support of the ALJ's opinion.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's

attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 28th day of February, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**